# Linklaters

Linklaters LLP
1290 6th Avenue
New York, NY 10104
Telephone: (+1) 212 903 9567
robin.nunn@linklaters.com

November 6, 2023

The Honorable Judge Edgardo Ramos
U.S. District Court, Southern District of New York
40 Foley Square
New York, New York, 10007

**Via ECF**

**RE: Motion for Temporary Restraining Order and Preliminary Injunction in Aid of Arbitration, in the case of** *Sector Resources Ltd v. Ethos Asset Management, LLC, and East West Bancorp. Inc.,* **1:23-cv-09728-ER**

Honorable Judge Edgardo Ramos:

We write as counsel to Ethos Asset Management, Inc. ("**Ethos**") in connection with the above referenced matter, in which Sector Resources Ltd. ("**Sector**") moved, on Friday, November 3, 2023, for a temporary restraining order and preliminary injunction against Ethos (altogether, the "**Emergency TRO**" or "**Motion**"). We accidentally stumbled across the Plaintiff's *Ex Parte* Motion during our normal course of reviewing the cases filed in this court over the weekend. This is anything but an *Ex Parte* matter. Ethos and Sector executed an agreement on March 29, 2023, later amended on June 2, 2023 (the "**Agreement**"). Several aspects of this Motion are contested. For the reasons we set out below, ahead of the hearing this Honorable Court has scheduled for November 6, 2023, *see* ECF No. 9, we ask that this Court allow time for proper briefing on the Emergency TRO, where Ethos will set out its arguments for why this Court should deny it. We do not seek to foreclose Your Honor's consideration of this matter on a properly noticed <u>non</u> *Ex Parte* motion, but only ask at this time that Your Honor deny the Motion <u>without prejudice</u> to it being presented on proper notice.

As Ethos will demonstrate if given the opportunity, the Emergency TRO was improper for reasons rooted in both substantive and procedural deficiency, namely: (i) Sector never attempted to serve or provide notice of this action to Ethos; (ii) Sector has utterly failed to comply with Rule 65 of the Federal Rules of Civil Procedure, by failing to show both (1) efforts made to give notice to Ethos, or reasons why notice to Ethos should not be required, and (2) immediate and irreparable harm; and (iii) by turning to this Court in its pursuit of "relief," Sector improperly attempts to circumvent the parties' unambiguous agreement to resolve disputes in the first instance by mediation if possible followed by binding arbitration.

1. <u>**Failure to Notify or Serve Ethos**</u>

As an initial matter, Sector's Emergency TRO came as a total surprise to Ethos, since Ethos communicated with Sector on Friday, November 3, 2023 informing them that it would be willing to terminate the lending agreement at issue in this matter and return Sector's collateral, and was not told of any plans to seek an Emergency TRO that same day.  **Sector provided no notice of its Motion and did not attempt to serve Ethos.**

Further, as soon as we lucked upon the Friday filing, we reached out to Sector's counsel offering to return the collateral and resolve the matter immediately.  Instead of responding to our email, Sector made another filing on Sunday evening (which they neither mentioned to us nor shared with us) and when they did finally respond to our email, Sector indicated they were unsure if we represented Ethos and it was too late "to withdraw its request for injunctive relief, based on an email sent on Sunday evening."  (See Exhibit A, Email from J. Marasciullo to R. Nunn on November 5, 2023)

2. <u>**Failure to Comply with Rule 65 of the Federal Rules of Civil Procedure**</u>

Sector has not satisfied Rule 65 of the Federal Rules of Civil Procedure and its requirements for filing the Emergency TRO on *an ex parte* basis.  Where a party seeks a temporary restraining order without written or oral notice to the adverse party – as Sector does here – the court may issue the order only if: (i) the movant's attorney certifies in writing any efforts made to give notice and the reason why it should not be required; and (ii) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.  *See* Fed.R.Civ.P. 65(b)(1).  **Sector has failed to meet both these requirements.**

<u>No certification of notice</u>: First, counsel to Sector did not even *attempt* to certify in writing any efforts made to give notice, or offer any reasons why notice should not be required.  *See* ECF No. 4-11 (omitting any semblance of such an attempt).

<u>No risk of "immediate and irreperable harm" without a preliminary injunction</u>: Sector has also failed to show that it would suffer immediate and irreparable harm without a preliminary injunction, much less a TRO.  Either is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).  In accordance with F.R.C.P. 65 and CPLR § 7502(c), a court may issue a preliminary injunction in aid of arbitration only where it has shown, *inter alia*, that it will suffer "irreperable harm absent injunctive relief." *See, e.g.*, *Metro. Taxicab Bd. Of Trade v. City of N.Y.*, 615 F.3d 152, 156 (2d Cir. 2010).  Irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999).  Irreparable harm exists "where, but for the grant of equitable relief, there is a *substantial* chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).  "A monetary loss will not suffice unless the movant provides evidence of damage that cannot be

rectified by financial compensation." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

In attempting to meet this burden, Plaintiff claims only that "there is danger of the *status quo* deteriorating in the time between a prejudgment remedy." ECF. No. 1 at ¶¶ 92-94. Specifically, it argues that "it is very likely that Sector's collateral and Ethos' assets 'will disappear during the proceedings and become unavailable to creditors by the time of final judgment.'" ECF No. 1 at ¶ 94 (citing *Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*, 177 F. Supp. 3d 810, 814 (S.D.N.Y. 2016)). But Plaintiff conveniently omits to inform this Honorable Court the fact that would undermine its argument: this dispute is, at its core, about money – *money that Ethos offered to return to Sector the very day that Sector filed this Emergency TRO*. *See* ECF No. 4-12 (November 3, 2023 e-mail from Carlos Santos, CEO of Ethos, offering to release the collateral and cancel the SBLC). Rather than respond, and work to take Ethos up on its offer to nullify the "irreparable harm" Sector now claims it will suffer – Sector never responded, opting instead to file the Emergency TRO with this Court. Further, Ethos' counsel reached out to Sector's counsel, less than 48 hours after the filing, as soon as Ethos' counsel discovered the Emergency TRO. Ethos made the same offer to return the collateral and resolve the dispute (as Ethos had previously done). Instead of discussing the issue, Sector bizarrely made an additional filing in support of the Emergency TRO and then later responded to Ethos' offer to resolve the matter by refusing to accept that we represent Ethos and declining to engage in further resolution discussions. (See Exhibit A, Email from J. Marasciullo to R. Nunn on November 5, 2023). *See, e.g.*, *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510 (S.D.N.Y. 2009) (finding that the defendant's cessation of the allegedly infringing conduct and commitment not to continue such conduct during the pendency of the lawsuit obviated the need for a preliminary injunction because the plaintiff could not show any likelihood of irreparable injury without the preliminary injunction); *American Express Travel Related Servs. Co. v. MasterCard Int'l Inc.*, 776 F.Supp. 787, 791 (S.D.N.Y.1991) ("When a defendant revises an allegedly infringing commercial and represents that the original commercial will not be broadcast in the future, the need for injunctive relief as to the original commercial is moot.").

Ethos has been in business for over a decade with over 90 clients across more than 72 countries. The transactions Ethos works on involve amounts substantially larger than the amount at issue here. Unlike how Sector describes Ethos as a "non-resident," Ethos a is U.S. business with its headquarters and offices in San Diego, California and Tysons Corner, Virginia. All of Ethos' core operations are in the United States and it has no intention of closing its business due to the termination of the relationship with Sector, a privately-held company focused on the development of mineral properties throughout Canada. Further, Ethos has never been found to be involved in any sort of fraud.

In light of the above, Sector cannot demonstrate that any harm would be "immediate" sufficient to meet the requirements for a temporary restraining order. Because temporary restraining orders are fundamentally an emergency relief mechanism, "delay in seeking the remedy suggests that the remedy is not really needed." *Minzer v. Keegan*, No. CV-97-4077 CPS, 1997 WL 34842191, at *6 (E.D.N.Y. Sept. 22, 1997). Here, as the exhibits submitted by Plaintiff itself demonstrate, the Plaintiff characterizes the parties' "dispute" as a months-long dialogue

in relation to the parties' obligations under the Agreement.  *See, e.g.*, ECF Nos. 1-4, 1-5, 1-6. Plaintiff offers no reason for why the dispute is now suddenly sufficiently "urgent" to require the Court's intervention without providing Ethos opportunity to respond.  *See Goldstein v. Hochul*, No. 22-CV-8300 (VSB), 2022 WL 20305832, at *2 (S.D.N.Y. Oct. 3, 2022) (where Plaintiffs had been on notice for several months about the relevant law, a months-later filed TRO indicates "lack of immediacy" and "belies the notion that Plaintiffs' alleged harm is sufficiently 'immediate' such that the extraordinary relief of a temporary restraining order is necessary or justified").

3. **Sector Improperly Attempts to Circumvent the Parties' Agreement to Mediate**

In addition, by filing its Emergency TRO, Sector asks this Court to help it improperly circumvent the dispute resolution procedures governing the parties' relationship.  Section 9.13 of the Agreement is unambiguous: "In the event of any dispute arising out of or in connection with the present Agreement, the parties shall first refer the dispute to proceedings under the ICC Mediation Rules."  **Sector has not referred the dispute to proceedings under the ICC Mediation Rules.**

Moreover, under NY CPLR § 7502, arbitration in connection with an application for a preliminary injunction must be commenced within thirty days of the granting of the provisional relief; where arbitration is not commenced within that period, the order granting such relief will expire.  Under the terms of the Agreement, any order granting Sector relief will *necessarily* expire because the Agreement requires the parties to first attempt mediation, and allows arbitration only where the dispute has not been settled through mediation within "60 days following the filing of a Request for Mediation."  ECF No. 4-2 at Section 9.13.[1]  Instead of improperly circumventing the Agreement that governs the parties' relationship – and inexcusably wasting this Court's resources – Sector should seek relief in accordance with the dispute resolution clause in the parties' agreements, as it agreed to do when it executed the Agreements from which its claims arise.

In the interest of demonstrating its commitment to achieving a resolution of this dispute, and as we intend to share at the November 6 hearing before this Honorable Court, Ethos agrees to draw on the letter of credit, and to arrive at a resolution agreeable to both Ethos and Sector, by using the dispute resolution procedure set out in the Agreement.  In the interim, for the aforementioned reasons, Ethos merely asks that this Honorable Court deny Sector's improperly filed TRO, or at a minimum provide opportunity for it to respond to this Emergency TRO before making a ruling.

---

[1] The relevant text of Section 9.13 of the Agreement reads as follows: "In the event of any dispute arising out of or in connection with the present Agreement, the Parties shall first refer the dispute to proceedings under the ICC Mediation Rules . . . If the dispute has not been settled pursuant to the said Rules within 60 days following the filing of a Request for Mediation . . . such dispute shall thereafter be finally settled under the Rules of Arbitration of the ICC by three arbitrators appointed in accordance with the said Rules of Arbitration."

Sincerely,

/s/ Robin Nunn

Robin Nunn