**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

SECTOR RESOURCES LTD,

                        Petitioner,

           v.

ETHOS ASSET MANAGEMENT, INC. *and* EAST
WEST BANCORP. INC. a/k/a EAST WEST
BANK,

                        Respondents.

Case No. 23 Civ. 09728 (ER)

-------------------------------------------------------------------x

**DEFENDANT ETHOS ASSET MANAGEMENT, INC.'S OPPOSITION**
**<u>TO PRELIMINARY INJUNCTION</u>**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.      LEGAL STANDARD ................................................................................................... 5

II.     THE COURT SHOULD DENY SECTOR'S MOTION FOR PROVISIONAL
RELIEF ......................................................................................................................... 9

       A.    Sector Will Not Suffer Irreparable Harm In The Absence Of Injunctive Relief ......... 9

       B.    Sector Is Not Likely To Succeed On The Merits ....................................................... 12

       C.    The Balance Of Hardships Tips Ethos' Favor .......................................................... 14

       D.    The Public Interest Would Be Disserved By The Issuance Of A Preliminary
Injunction ................................................................................................................. 17

       E.    A Hypothetical Arbitration Award Will Not Be Rendered Ineffectual Without
Injunctive Relief ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*159 MP Corp. v. Redbridge Bedford LLC*,
    128 N.E.3d 128 (N.Y. 2019) ................................................................15

*Aiena v. Olsen*,
    37 F. Supp. 2d 303 (S.D.N.Y. 1999) ..............................................9, 17

*AT&T LLC v. Concepcion*,
    563 U.S. 333 (2011) ...........................................................................15

*Atlas MF Mezzanine Borrower, LLC. v. Macquarie Texas Loan Holder, LLC*,
    No. 17 Civ. 1138 (LLS), 2017 WL 729128 (S.D.N.Y. Feb. 23, 2017) .................13

*Banco Popular N. Am. v. Austin Bagel Co.*,
    No. 99 CIV. 11252 SAS, 2000 WL 669644 (S.D.N.Y. May 23, 2000) ............7, 11

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
    784 F. 2d 887 (2d Cir. 2015) ..............................................................16

*Benisek v. Lamone*,
    138 S. Ct. 1942 (2018) .........................................................................8

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    910 F.2d 1049 (2d Cir. 1990) ...............................................................8

*Brown & Williamson Tobacco Corp. v. Engman*,
    527 F.2d 1115 (2d Cir. 1975) ..............................................................16

*Campbell Apartment, Ltd. v. Metro. Transp. Auth.*,
    35 N.Y.S.3d 856 (Sup. Ct. 2016) ...........................................6, 9, 10, 13

*Cantu v. Flanigan*,
    705 F. Supp. 2d 220 (E.D.N.Y. 2010) ..................................................9

*Capstone Logistics Holdings, Inc. v. Navarrete*,
    736 F. App'x 25 (2d Cir. 2018) ............................................................4

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985) ...........................................................5, 10

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F. 3d 16 (2d Cir. 1995) ..................................................................16

*Gairy v. City of New York*,
No. 23CV00802 (NGG) (SJB), 2023 WL 6517542 (E.D.N.Y. Oct. 4, 2023) .........................5

*Goldberg v. First Devonshire Corp.*,
320 F. Supp. 780 (S.D.N.Y. Dec. 7, 1970) ..............................................................14

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,
922 F. Supp. 2d 435 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 210 (2d Cir. 2014) ...........................12

*Guitard v. U.S. Sec'y of Navy*,
967 F.2d 737 (2d Cir. 1992)..................................................................5, 9, 10, 13

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
596 F.2d 70 (2d Cir. 1979)...........................................................................12

*Jet Experts, LLC v. Asian Pac. Aviation Ltd.*,
602 F. Supp. 3d 636 (S.D.N.Y. 2022)..............................................................14, 15

*Lola Roberts Beauty Salon, Inc. v. Leading Ins. Grp. Ins. Co.*,
76 N.Y.S.3d 79 (App. Div. 2018) ....................................................................11

*Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*,
103 F. Supp. 3d 244 (N.D.N.Y. 2015).................................................................16

*Mastrovincenzo v. City of New York*,
435 F. 3d 78 (2d Cir. 2006).......................................................................7, 11

*Munaf v. Geren*,
553 U.S. 674 (2008)................................................................................14

*Nichiporuk v. Bd. of Educ. of Palmyra-Macedon Cent. Sch. Dist.*,
No. 05-CV-6315L, 2005 WL 1429913 (W.D.N.Y. June 20, 2005) .......................5, 9, 10, 13

*Psihoyos v. John Wiley & Sons, Inc.*,
No. 11 CIV. 1416 (JSR), 2011 WL 4634172 (S.D.N.Y. Oct. 4, 2011) ..................................5

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
754 F. Supp. 2d 616 (S.D.N.Y. 2010)..............................................................14, 16

*Robar v. Vill. of Potsdam Bd. of Trs.*,
490 F. Supp. 3d 546 (N.D.N.Y. 2020) ..............................................................7, 11

*Rodriguez ex rel. Rodriguez v. DeBuono*,
175 F.3d 227 (2d Cir. 1999)...........................................................................5

*Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co. of N.Y.*,
749 F.2d 124 (2d Cir. 1984)...........................................................................8

*Roswell Cap. Partners LLC v. Alternative Constr. Techs.*,
No. 08 CIV 10647(DLC), 2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) .............................7, 11

*S.E.C. v. Citigroup Glob. Mkts. Inc.*,
673 F.3d 158 (2d Cir. 2012)......................................................................................................8

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010)...................................................................................................8, 15

*Setter Cap., Inc. v. Chateauvert*,
130 N.Y.S.3d 905 (Sup. Ct. 2020) ...................................................................................6, 9, 10

*Simmons v. Cranston*,
No. 07 CIV. 3241 (RJH)(MHD), 2008 WL 820474 (S.D.N.Y. Jan. 14, 2008),
*report and recommendation adopted*, No. 07 CIV. 3241 (RJH)(MHD), 2008
WL 655610 (S.D.N.Y. Mar. 11, 2008) ....................................................................................7

*Star Boxing, Inc. v. Tarver*,
No. 02 CIV. 8446 (GEL), 2002 WL 31867729 (S.D.N.Y. Dec. 20, 2002) ....................6, 9, 17

*Sutphin Retail One, LLC v. Sutphin Airtrain Realty, LLC*,
40 N.Y.S.3d 457 (App. Div. 2016) ........................................................................................15

*Thomas v. New York City Bd. of Elections*,
898 F. Supp. 2d 594 (S.D.N.Y. 2012)......................................................................6, 11, 12, 17

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir. 1989).................................................................................................5, 9

*Tula Bus., Inc. v. Med. Indus. of Am., Inc.*,
No. 97 CIV. 0847 (DAB), 1997 WL 68565 (S.D.N.Y. Feb. 18, 1997)...............................6, 11

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
454 F. Supp. 2d 62 (E.D.N.Y. 2006) ......................................................................................13

*Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.*,
627 F. Supp. 3d 408 (S.D.N.Y. 2022)......................................................................................12

*W.B. Marvin Mfg. Co. v. Howard Beer Co.*,
33 F. App'x 588 (2d Cir. 2002) ...............................................................................................13

*We The Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2d Cir. 2021) ....................................................................................................14

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)......................................................................................................................7

## STATUTES & RULES

Fed. R. Civ. P. 9 ......................................................................................................................15

Fed. R. Civ. P. 65 ....................................................................................................................13

Misc. 3d 282, 301–02 ..............................................................................................................13

N.Y. C.P.L.R. 7502 ................................................................................................................17

N.Y. C.P.L.R. 7503 ................................................................................................................15

## PRELIMINARY STATEMENT

Contrary to Sector's claims, this case arises from Sector's premature and improper *ex parte* Motion filed in the midst of good faith and productive negotiations between Ethos and Sector to address the very same concerns Sector raises here. Instead of continuing these fruitful negotiations, Sector, without any warning, filed this Motion seeking a temporary restraining order and preliminary injunction of a yet-to-be-commenced arbitration.

As described in Ethos' November 6, 2023 letter to the Court and below, Sector's Motion was improperly filed *ex parte*, is legally baseless, and seeks to perform an end-run around the Parties' bargained for contractual terms and chosen forum for the resolution of disputes. ECF No. 12 at 1–4. The Court, also on November 6, denied Sector's request for a temporary restraining order.

Sector's request for a preliminary injunction is similarly baseless. Sector cannot establish that it will suffer "irreparable harm" as it has not alleged any injuries which courts do not routinely address through monetary damages. Further, even assuming that Sector is facing "irreparable harm," the specific injunctive relief Sector requests will not ameliorate or prevent its alleged injuries in any way. Further, Sector has not established that it has a clear or substantial likelihood of success on the merits as it has not shown that Ethos breached the contract, or that Ethos failed multiple times to release the collateral that were never requested or that Sector's alleged damages were proximately caused by Ethos.

Sector cannot allege damages in their operations due to the delay of disbursements by Ethos, because Ethos has financed a project, not networking capital. Sector should not have incurred in new liabilities based on expectations or future cash flow provided under the Agreement prior to receiving funds under the agreement unless Sector was financially able to fulfill such obligations independently of the Ethos financing. Further, Sector could not plan to use financing

for networking capital because that would be a breach of the Agreement, which sets forth that Sector shall exclusively use the Funds provided by Ethos to develop the Project as defined in the Agreement.

Beyond the lack of irreparable harm and merit of Sector's claims, the balance of the equities tips heavily in Ethos' favor. Sector has delayed bringing this action several months, evincing a lack of urgency. Further, Sector's requested relief is not tailored to ensure that Sector will not face irreparable harm. Sector seeks to freeze all of Ethos' accounts at its bank, unnecessarily impacting Ethos' business, while pointing only to a speculative and highly attenuated risk of dissipation from Ethos having access to its accounts. Moreover, the severe reputational damage that would result from this Court granting the Motion dwarfs any possible such damage to Sector if the preliminary injunction was denied.

Sector improperly attempted to circumvent the Parties' agreement to arbitration; which was a grave error, misguided, dangerous and shocking, at worst, damaging, vindictive, punitive and a deliberate action by Sector. The impact of the petition and filing for an emergency temporary restraining order has placed in the public domain damaging allegations about Ethos (untrue) which has already caused Ethos to suffer reputational damage and harm from around the world with its stakeholders. The reputational damage this will have on Ethos' ability to continue operating and trading has become the focal point of this lawsuit. Ironically, it is Ethos that will now suffer irreparable harm as a result of Sector's misconduct and actions.

Finally, granting a preliminary injunction in this case would disserve the public's interest in upholding valid arbitration clauses like the one found in the Agreement.

For these reasons and as described more fully below, Ethos respectfully requests that the Court (i) deny Sector's request for a preliminary injunction; and (ii) dismiss these proceedings in favor of arbitration.

## BACKGROUND

Ethos, founded in founded in 2018 in the USA, but is the evolution of the Group founded in Portugal in 2012, is an investment services corporation, specializing in project finance. It has been in business for over a decade with over 90 clients across more than 72 countries. Declaration of Carlos Santos ("Santos Decl.") ¶ 3. Ethos has offices in San Diego and Northern Virginia, Brazil, South Africa, UK, Portugal and Turkey. Our primary markets are USA, Brazil, UK, Turkey and Mexico with Infrastructure, Energy and Construction as the largest three industries supported by the Group. You can see attached some of our Portfolio of Investments and Investment Policy. In our website testimonial videos, press releases and news are possible to be viewed about some of our most relevant deals. See https://www.ethosasset.com/client-tv; https://www.ethosasset.com/news.

Ethos offers financing to private clients in all economic sectors through the use of one of three innovative financing models: (1) classic financing, (2) crisis financing, or (3) philanthropic financing. Under Ethos' classic financing model, Ethos (as lender) provides a financing to the project promoter, typically disbursed in tranches. The financing is intended to amortize over time, with the project promoter repaying principal and interest at a fixed rate over a long period. *Id.* ¶ 5.

To secure the financing under the "classic" arrangement, the project promoter – here, Sector – must put up cash collateral equal to 20-25% of the funding amount, which is deposited into a pledge account controlled by a collateral agent. The collateral agent is typically the bank that controls the pledge account; it is not party to any of the financing documents, and

does not act as a mediator of the deal.  The collateral agent is instructed to invest the collateral in a mix of securities and cash/equity indices.  The project promoter must also obtain a margin application from the collateral agent to extend a margin value (equal to 65% of the collateral) to Ethos, which Ethos may use as it sees fit (the "margin value facility").  In essence, the collateral is used secondary as security for the financing between Ethos and the project promoter, primary to secure the margin value facility between the collateral agent and the project promoter.  *Id*. ¶ 5.

On or around March 29, 2023, Ethos and Sector entered into a Loan Agreement under which Ethos agreed to loan Sector $50 million in five $10 million periodic tranches in exchange for Sector providing a $10 million Standby Letter of Credit ("SBLC").  *Id*. ¶ 9. Importantly, under the Agreement, satisfaction of the Collateral does not, in and of itself, trigger Ethos' disbursement obligations.  Under Section 4.1 of the Agreement, Sector must ensure "the issuance of an updated bank statements ("Proof of Funds") confirming financial capacity of [Sector] and the willingness of [Sector's] issuing bank to issue a SBLC and its provision of SWIFT MT760 in the form agreed by [Ethos]."  ECF No. 4-2 at Section 4.1(ii).  Section 4.1 further states, "[a]fter [Ethos'] receiving Bank receives the SWIFT MT760 from [Sector's] issuing Bank and will carry out a verification procedure.  In case of **positive verification and activation**, [Ethos] will make the disbursement of funds, in accordance with the disbursement schedule detailed in Exhibit B."  *Id*. Section 4.1(vii) (emphasis added).

On April 6, 2023, Sector's bank, JPMorgan ("JPM") delivered the SBLC to Ethos' bank EWB via SWIFT.  Santos Decl. ¶ 13. Because the requirements of Section 4.1 of the Agreement – **positive verification and activation** by Ethos' bank, East West Bank – were never met, Ethos was never under any contractual obligation to make disbursements to Sector.  Santos Decl. ¶ 12.  That would simple start after the credit line backed by 10 M USD be available to

Ethos. That never happen because the credit line for that amount was not allocated by EWB to Ethos. 13.  The Loan Agreement was then amended on June 2, 2023 (as amended, the "Agreement") reducing the SBLC to $5.05 and requiring Sector to deposit $3.25 million in cash and pledge gold to overcome the non collateral in place.  ECF No. 4-3 (Amendment) at Section 3.3.  On June 6, 2023, at Sector's request, JPM wired $3.25 million to Ethos into Ethos' EWB account.  ECF No. 5 at 5.

Although these collateral requirements were in place, because the requirements (pledge of 3,25 M USD) of Section 4.1 of the Agreement – **positive verification and activation** by Ethos' bank, East West Bank – were never met, Ethos was never under any contractual obligation to make disbursements to Sector.  Santos Decl. ¶ 12.

On November 3, 2023, Sector filed its Complaint (ECF No. 1) and Emergency Motion for a Temporary Restraining Order (ECF No. 4), alleging that Ethos breached the Agreement and requesting a preliminary injunction enjoining Respondents "from making any draws on the SBLC" and "from making any withdrawals from any Ethos account at EWB until Ethos provides proof that it has returned Sector's $3.25 million in cash collateral" and ordering Respondent "to cancel the SBLC."  ECF No. 5 at 21.

On November 6, 2023, the Court denied Sector's request for a temporary restraining order on the grounds that the "dispute has been going on for a number of months," and ordered Ethos to respond to the request for a preliminary injunction on November 8, 2023.  Ex. B (Hearing/TRO Tr.) at 16:18-19.

## ARGUMENT

## I.    LEGAL STANDARD

"To receive a preliminary injunction, the plaintiff must show (1) a likelihood of success on the merits, (2) that [the plaintiff] is likely to suffer irreparable injury in the absence of

an injunction, (3) that the balance of hardships tips in the plaintiff's favor, and (4) that the public interest would not be disserved by the issuance of [the] injunction." *Capstone Logistics Holdings, Inc. v. Navarrete*, 736 F. App'x 25, 25-26 (2d Cir. 2018) (Mem.) (internal citation and quotation marks omitted). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion," *id.* at 26 (emphasis in original) (internal quotation marks omitted), and the movant "must satisfy all four elements of the test in order to establish his entitlement to [it]." *Psihoyos v. John Wiley & Sons, Inc.*, No. 11 CIV. 1416 (JSR), 2011 WL 4634172, at *2 (S.D.N.Y. Oct. 4, 2011).

Irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (internal quotation marks omitted). To obtain a preliminary injunction, the movant must show that if a preliminary injunction is not granted they would face irreparable injury during the pendency of the action. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) ("Given the low profile of the Long Island office, it is unclear on this record what additional irreparable harm would result during the pendency of this action from the fact that the salesmen are surrounded by four walls."); *Gairy v. City of New York*, No. 23CV00802 (NGG) (SJB), 2023 WL 6517542, at *1 (E.D.N.Y. Oct. 4, 2023) ("Lewis made nearly identical motions in *Cronin v. City of New York* and *Williams v. City of New York*, and the courts in each case denied Lewis's application for injunctive relief because Lewis had not shown that he faced irreparable harm from the pendency of the OATH proceeding.").

"A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Further, harm to one's reputation and similar intangible things

that result from many forms of monetary loss do not necessarily constitute irreparable harm. *See Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992) ("[T]he injuries that generally attend a discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute the irreparable harm necessary to obtain a preliminary injunction."); *Nichiporuk v. Bd. of Educ. of Palmyra-Macedon Cent. Sch. Dist.*, No. 05-CV-6315L, 2005 WL 1429913, at *1 (W.D.N.Y. June 20, 2005) ("That various difficulties-such as an inability to pay one's attorney-might crop up when a person loses his job does not make the loss of income from that job 'irreparable.' If it were otherwise, virtually every plaintiff who claims to have been wrongfully discharged could seek injunctive relief."); *Setter Cap., Inc. v. Chateauvert*, 130 N.Y.S.3d 905, 909 (Sup. Ct. 2020) ("[T]he harm that plaintiff asserts is the diversion of future deals which is hardly irreparable."); *Campbell Apartment, Ltd. v. Metro. Transp. Auth.*, 35 N.Y.S.3d 856, 871 (Sup. Ct. 2016) ("In order to establish irreparable harm, petitioner must show that it cannot be compensated by money damages.").

Indeed, courts regularly provide monetary remedies to those who claim damage to their reputation and similar injuries. *See Star Boxing, Inc. v. Tarver*, No. 02 CIV. 8446 (GEL), 2002 WL 31867729, at *3 (S.D.N.Y. Dec. 20, 2002) ("Any harm [the plaintiff boxing promoter] sustains as a result of any embarrassment or injury to its reputation among boxers and other industry players is also economic, in that it would affect its ability to sign other boxers and to arrange and effectively negotiate other fights. To the extent such reputational damage occurs, it is of a sort commonly assessed by courts and arbitrators and remedied through monetary awards.").

Regarding the merits element,

The typical preliminary injunction is prohibitory and is intended to maintain the status quo pending a trial on the merits. A mandatory injunction, by contrast, seeks to alter the status quo by compelling a party to perform some positive act. Because a mandatory injunction alters the status quo, the Second Circuit has held that the

> granting of such relief requires a *more* substantial showing of likelihood of success
> on the merits.

*Tula Bus., Inc. v. Med. Indus. of Am., Inc.*, No. 97 CIV. 0847 (DAB), 1997 WL 68565, at *1
(S.D.N.Y. Feb. 18, 1997) (emphasis in original) (internal citations omitted).  *See also Thomas v.
New York City Bd. of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012) ("[A] district court may
enter a mandatory preliminary injunction against the government only if it determines that, in
addition to demonstrating irreparable harm, the moving party has shown a 'clear' or 'substantial'
likelihood of success on the merits."); *Robar v. Vill. of Potsdam Bd. of Trs.*, 490 F. Supp. 3d 546,
557 (N.D.N.Y. 2020) ("[W]hen the movant seeks not a prohibitory stay, but a mandatory order—
that is, if the injunction would alter the status quo by commanding some positive act—the standard
is even higher; the movant must demonstrate a clear or substantial likelihood of success on the
merits." (quoting *Mastrovincenzo v. City of New York*, 435 F. 3d 78, 89 (2d Cir. 2006)) (internal
quotation marks omitted).

Further, courts in this Circuit have held that where the injunction sought involves
the transfer of collateral, it constitutes a "mandatory" injunction.  *See Roswell Cap. Partners LLC
v. Alternative Constr. Techs.*, No. 08 CIV 10647(DLC), 2009 WL 222348, at *10 (S.D.N.Y. Jan.
30, 2009) ("The parties agree that Plaintiffs must meet the more demanding standard that applies
when a party seeks a mandatory injunction, because Plaintiffs seek the court to order the
affirmative act of a transfer of the Collateral to Plaintiffs' control."); *Banco Popular N. Am. v.
Austin Bagel Co.*, No. 99 CIV. 11252 SAS, 2000 WL 669644, at *3 (S.D.N.Y. May 23, 2000).

"[E]ven if the movant makes a colorable showing of likely irreparable harm and a
sufficient prospect of success on the merits, the trial court has wide discretion in deciding whether
an injunction *pendente lite* is appropriate under the circumstances."  *Simmons v. Cranston*, No. 07
CIV. 3241 (RJH)(MHD), 2008 WL 820474, at *2 (S.D.N.Y. Jan. 14, 2008) (internal quotation

marks omitted), *report and recommendation adopted*, No. 07 CIV. 3241 (RJH)(MHD), 2008 WL

655610 (S.D.N.Y. Mar. 11, 2008).

Regarding the third element, when confronted with a motion for a preliminary

injunction, a court "must balance the competing claims of injury and must consider the effect on

each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council,*

*Inc.*, 555 U.S. 7, 24 (2008).  Plaintiffs must establish that the "balance of hardships" tips in their

favor regardless of the likelihood of success. *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir.

2010).

Regarding the fourth element, "the court must ensure that the public interest would

not be disserved by the issuance of a preliminary injunction[,]" *Salinger*, 607 F. 3d at 80  (internal

quotation marks omitted), and "that the balance of equities tips in [the movant's] favor." *Benisek*

*v. Lamone*, 138 S. Ct. 1942, 1944, (2018); *see also S.E.C. v. Citigroup Glob. Mkts. Inc.*, 673 F.3d

158, 163 n.1 (2d Cir. 2012) ("[W]hen a court orders injunctive relief, it should ensure that

injunction does not cause harm to the public interest.").  Where the parties have agreed to arbitrate

a dispute, a district court may issue a preliminary injunction to preserve the *status quo* pending

arbitration.  *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052–

53 (2d Cir. 1990).  The standard for such an injunction is the same as for preliminary injunctions

generally.  *Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co. of N.Y.*, 749 F.2d 124,

125–26 (2d Cir. 1984).

## II.    THE COURT SHOULD DENY SECTOR'S MOTION FOR PROVISIONAL RELIEF

### A.    Sector Will Not Suffer Irreparable Harm In The Absence Of Injunctive Relief

Sector argues that if injunctive relief is not granted, it will face irreparable harm,

including to its reputation and relationships.  ECF No. 5 at 15-16.  But this Court has already

questioned the validity of Sector's claims of irreparable harm here, because "this dispute has been going on for a number of months," Ex. B (Hearing/TRO Tr.) at 16:18-19, without Sector taking any action to redress these alleged harms, including by utilizing the dispute resolution measures set forth in the Agreement. *See id.* at 11:24-12:2 (Q: "And two, have you begun the arbitration proceedings?"; A: "We have not begun the arbitration proceedings"). Primarily on this basis, the Court denied Sector's request for a temporary restraining order. *Id.* at 16:16-19. The same rationale should be applied to Sector's request for a preliminary injunction, and it should be denied.

Sector argues that there is a risk that its collateral will be dissipated if an injunction is not granted. ECF No. 5 at 16. But dissipation of collateral is a classic example of monetary loss, and "[a] monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." *Tucker Anthony Realty Corp.*, 888 F.2d at 975. Further, Sector provides only attenuated allegations of misconduct and has provided no concrete evidence that there is a substantial risk that its collateral will be dissipated. *See Aiena v. Olsen*, 37 F. Supp. 2d 303, 305 (S.D.N.Y. 1999) (denying a motion for a preliminary injunction in part because "[t]here [was] no competent or reliable evidence that any defendant [was] likely to . . . secrete or dissipate assets").

Sector also argues that it has experienced harm to its reputation and relationships in the absence of an injunction. Even assuming that these claims of harm are true, injury to one's reputation or relationships does not necessarily constitute "irreparable harm" for purposes of a preliminary injunction. *See Guitard*, 967 F.2d at 742; *Nichiporuk*, 2005 WL 1429913, at *1; *Campbell Apartment, Ltd.*, 35 N.Y.S.3d at 871–72; *Setter Cap., Inc.*, 130 N.Y.S.3d at 909.

The injuries Sector alleges are economic in nature in that the purported damage to Sector's reputation and relationships with "employees, consultants, and the relevant mining

authorities" and its bank allegedly hinder its ability to avail itself of these relationships to make money.  *See Star Boxing, Inc.*, 2002 WL 31867729, at *3.  Such injuries, however, are regularly quantified by courts, *see id.*, and awards based on such injuries are regularly given.  *See Cantu v. Flanigan*, 705 F. Supp. 2d 220, 225 (E.D.N.Y. 2010) (upholding $150,000,000 award for harm to reputation, humiliation and mental anguish).  Accordingly, courts have routinely found such injuries to be insufficient to establish irreparable injury.  *See Guitard*, 967 F.2d at 742; *Nichiporuk*, 2005 WL 1429913, at *1; *Campbell Apartment, Ltd.*, 35 N.Y.S.3d at 871–72; *Setter Cap., Inc.*, 130 N.Y.S.3d at 909.

Further, Sector also claims that without injunctive relief, "it will lose twenty years of work and millions of dollars in investments."  ECF No. 5 at 16.  This is clearly an alleged monetary injury, which Sector impliedly concedes by claiming it would lose "millions of dollars," and thus can readily be quantified by a court.

Moreover, courts have found that delay by the moving party weighs against a finding of irreparable injury.  *See Citibank, N.A.*, 756 F.2d at 275 ("[F]ailure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'").  Here, as the Court stated, *see* Ex. B (Hearing/TRO Tr.) at 16:16-19, Sector waited several months to file this action, undermining Sector's argument that they will face irreparable harm absent their requested injunctive relief.

Sector should not have incurred in new liabilities based on expectations or future cash flow provided under the Agreement prior to receiving funds under the Agreement.  Sector could not plan to use financing for networking capital because that would be a breach of the Agreement, which sets forth that Sector shall exclusively use the Funds provided by Ethos to develop the Project.

Finally, the relief that Sector seeks through this Motion will not in any way remedy these alleged injuries. Sector asks this Court to enjoin Respondents "from making any draws on the SBLC" and "from making any withdrawals from any Ethos account at EWB until Ethos provides proof that it has returned Sector's $3.25 million in cash collateral" and order Respondent "to cancel the SBLC." ECF No. 5 at 21. As opposed to a request for the Court to order Ethos to pay the collateral, Sector has not (because it cannot) shown how the requested injunctive relief will remedy or prevent worsening of Sector's alleged injuries, namely injury to its reputation and the loss of its leases. Accordingly, by definition, Sector has failed to show that its requested injunctive relief will prevent irreparable injury.

**B.    Sector Is Not Likely To Succeed On The Merits**

Sector, through this Motion, requests that the Court both disrupt the *status quo*, and order Respondents to perform the positive act of canceling the SBLC. Thus, as opposed to a prohibitory injunction – which would require only that Respondents refrain from doing some act – Sector is seeking a mandatory inunction. *See Roswell Cap. Partners LLC*, 2009 WL 222348, at *10; *Banco Popular N. Am.*, 2000 WL 669644, at *3.

Accordingly, Sector's Motion is subject to a significantly more exacting standard with respect to the merits element: Sector must show it has a "a clear or substantial likelihood of success on the merits." *Thomas*, 898 F. Supp. 2d at 597 (internal quotation marks omitted); *Robar*, 490 F. Supp. 3d at 557 (quoting *Mastrovincenzo*, 435 F. 3d at 89); *Tula Bus., Inc.*, 1997 WL 68565, at *1. Sector has failed to satisfy this high bar.

Sector claims that "it is indisputable that Ethos breached its obligations to deliver the first three payments of $10 million, which were due on July 20, 2023, August 31, 2023, and October 16." ECF No. 5 at 14-15. But Ethos never had an obligation to make these payments. As the Agreement clearly provides, regarding the SBLC, "[a]fter [Ethos'] receiving Bank receives

the SWIFT MT760 from [Sector's] issuing Bank and will carry out a verification procedure. In case of positive verification and activation, [Ethos] will make the disbursement of funds, in accordance with the disbursement schedule detailed in Exhibit B." ECF No. 4-2 at Section 4.1(vii). This verification and activation never occurred for the full 10 M USD, so Ethos was not under any obligation to make disbursements to Sector. Any alleged failure by Ethos to do so was therefore not a breach of the Agreement. Santos Decl. ¶ 12. Further, Sector alleges that Ethos failed to return the collaterals over a long period of time. But that is a pure false statement because October 30, 2023 was the first time that the termination and full return of all collaterals were discussed, and Santos accepted, informing Sector that it would be necessary to have a Settlement Agreement in place to regulate such termination.

Additionally, to make a claim for breach of contract, a plaintiff must show not only the existence of a contract and that it was breached, but also that its alleged damages were the proximate cause of the breach. *See Lola Roberts Beauty Salon, Inc. v. Leading Ins. Grp. Ins. Co.*, 76 N.Y.S.3d 79, 81 (App. Div. 2018) ("Proximate cause is an essential element of a breach of contract cause of action.").

Here, Sector only makes sweeping allegations regarding its alleged damages – the shutting down of its mines and related reduction in revenue and operations; damaged relationships with its employees, mining authorities in Canada and Colombia, and its bank; and loss of reputation and good will – and states in conclusory fashion that Ethos' alleged breach was the cause of these damages. ECF No. 1 ¶ 91. However, Sector does not allege sufficient facts to show that its damages were the foreseeable consequence of the breach. *See Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.*, 627 F. Supp. 3d 408, 421 (S.D.N.Y. 2022) ("It is axiomatic that . . . the law awards damages for breach of contract to compensate for injury caused

by the breach—injury which was foreseeable, *i.e.*, reasonably within the contemplation of the parties, at the time the contract was entered into."). Thus, Sector has not pleaded sufficient facts to show that it has "a clear or substantial likelihood of success on the merits." *Thomas*, 898 F. Supp. 2d at 597 (internal quotation marks omitted). Sector was obligated to manage itself in a responsible manner. Incurring liabilities and contracts based on expectations of future cash flow provided under a Financing Agreement are not considered responsible actd and are a breach of Sector's fiduciary obligations to itself. Sector shall not incur any financial obligations prior to receiving funds under this contract unless Sector is financially able to fulfil such obligations independently.

### C.    The Balance Of Hardships Tips Ethos' Favor

When a party moves for a preliminary injunction asserting that there are sufficiently serious questions going to the merits, the movant must also demonstrate "a balance of hardships" decidedly tipped in the movant's favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). The balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided. *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 210 (2d Cir. 2014).

Moreover, this harm must exceed the general cost of doing business. As noted above, this Circuit has underscored that everyday business losses that affect reputation or ability to make payments are not sufficient to rise to the level of irreparable harm. *See Guitard*, 967 F.2d at 742 (finding that loss of income and difficulty finding employment was not enough to establish irreparable harm); *Nichiporuk*, 2005 WL 1429913, at *1; *Campbell Apartment Ltd.*, 53 Misc. 3d 282, 301–02, 35 N.Y.S.3d 856, 871–72 (N.Y. Sup. Ct. 2016) (explaining that having to fire numerous employees is not an irreparable harm).

In its Complaint, Sector alleges that without an injunction it will suffer irreparable harm through fractured relationships and a damaged reputation and through the risk of dissipated collateral.  As outlined above, the impact of either of these possibilities on Sector's operations is limited and rooted primarily in attenuated allegations rather than actual evidence.  Accordingly, they are not sufficient grounds on which to grant a preliminary injunction.

Despite Sector's alleged losses, it has failed to take steps that would rectify the alleged harms.  Not only did they fail to promptly file suit, but they also failed to take advantage of the dispute resolution measures under the Agreement.  As with irreparable harm, courts consistently find delay by the moving party to be a relevant factor in determining the balance of the hardship.  *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 70 (E.D.N.Y. 2006).  Moreover, the court has also found that even when taking an alternate course of action such as negotiations, delay is a relevant factor that can shift the burden of hardship away from the moving party.  *See W.B. Marvin Mfg. Co. v. Howard Beer Co.*, 33 F. App'x 588, 592 (2d Cir. 2002) (connecting the plaintiff's decision to delay bringing suit while conducting negotiations to the denial the motion for summary judgment). [1]

By contrast, if the preliminary injunction is wrongly granted, Ethos stands to suffer far greater losses. First, the injunction sought would bar Ethos' access to accounts not even associated with the dispute at issue.  ECF No. 5 at 21; *See e.g., Goldberg v. First Devonshire Corp.*, 320 F. Supp. 780 (S.D.N.Y. Dec. 7, 1970) (finding that where an injunction would terminate future assistance, interrupt orderly liquidation, and prevent Trustees form assisting additional

---

[1]    Further, the fear of loss of an investment does not amount to an irreparable harm as a matter of law.  Fed. R. Civ. P. 65(a).  As this Court has stated, even where the balance of hardship is in the plaintiff's favor, if the harm came from "business realities," those are not fair grounds for litigation or court intervention.  *Atlas MF Mezzanine Borrower, LLC. v. Macquarie Texas Loan Holder, LLC*, No. 17 Civ. 1138 (LLS), 2017 WL 729128, at *5 (S.D.N.Y. Feb. 23, 2017).

customers, the balance of harm weighed against the movant).  Second, unlike the movant's alleged reputational damage which amounts to the typical costs associated with running a business, the harm to Ethos' reputation, should the Motion be granted, is far greater.  Granting the preliminary injunction not only suggests to the public that the court finds merit in the movant's concern that Ethos will abscond with its collateral, but also supports the underlying implications movant makes about Ethos' operations.  A preliminary injunction is an "extraordinary and drastic remedy." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279 (2d Cir. 2021) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).  To mar a company's public image with the assertion that they are in fact deserving of this suspicion from the courts, would taint their public image far beyond what a company goes through when it has to lay off employees or scale back operations.  Thus, the balance of hardships weigh in Ethos' favor.

Ethos would be trying to manage a crisis if a preliminary injunction was entered. Sector has grossly miscalculated with its flawed strategy.  Ethos is currently paying the price for this and will continue to do so.  Sector's filing for a temporary restraining order and assuming that it will be granted by the Court, freezing Ethos' bank account at EWB and the SBLC, would be a major blow to the heart of Ethos' USA operations.  Sector's misguided belief that freezing Ethos' EWB account will secure claimable assets for Sector, whilst Ethos can continue operating as a business and take part in a lengthy arbitration is a fallacy.  The reputational damage this will have on Ethos' ability to continue operating and trading has become the focal point of this lawsuit brought about by Sector.  Ethos may no longer be in operation for Sector to arbitrate against. To preserve Sector's business, Sector has decided to try to destroy Ethos' business.  Other clients of Ethos could take a dim view of the lawsuit and outcome and take action themselves as the online and public domain shares this news, causing further damage and destruction to Ethos.

**D.    The Public Interest Would Be Disserved By The Issuance Of A Preliminary Injunction**

Sector argues that "[t]he public has an interest in the enforcement of contractual obligations and prevention of fraud," and that therefore the public interest prong weighs toward issuing a preliminary injunction.  ECF No. 5 at 18; *Jet Experts, LLC v. Asian Pac. Aviation Ltd.*, 602 F. Supp. 3d 636, 645 (S.D.N.Y. 2022) (citing *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010)).  However, the public's interest in the enforcement of contracts does not bear on the preliminary injunction analysis.  In fact, *Jet Experts* concerns a plaintiff's request for specific performance of a contract, which Sector does not seek. *Id.* at 638. Further, there has been no cause of action pleaded for fraud,[2] so Sector's implication that there exists some fraud to be prevented in the public's interest is inapposite.

The appropriate inquiry is not, as Sector characterizes it, whether the public interest weighs toward or against granting the preliminary injunction.  Rather, the question is whether the issuance of this extraordinary remedy would disserve the public interest.  *See Salinger*, 607 F. 3d at 80.

If anything, granting a preliminary injunction in this case would disserve the public's interest in upholding valid arbitration agreements.  As Sector correctly points out, New York courts "have long deemed the enforcement of commercial contracts according to the terms adopted by the parties to be a pillar of the common law." *159 MP Corp. v. Redbridge Bedford LLC*, 128 N.E.3d 128, 132 (N.Y. 2019).  Agreements to arbitrate are no exception to this principle. It is well-settled under both federal and New York law that valid agreements to arbitrate should be enforced.  *See AT&T LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (describing the "liberal federal

---

[2]    Although Sector references "an effort to defraud" on the part of Ethos, it has not pleaded a cause of action for fraud, nor has it supported its allegation with a sufficient factual showing that would satisfy the heightened pleading standard required for fraud by Rule 9(b). ECF No. 5 at 21.

policy favoring arbitration" reflected in the Federal Arbitration Act and stating that "courts must place arbitration agreements on an equal footing with other contracts"); *Sutphin Retail One, LLC v. Sutphin Airtrain Realty, LLC*, 40 N.Y.S.3d 457 (App. Div. 2016) ("Where there is no substantial question whether a valid agreement was made or complied with, . . . the court shall direct the parties to arbitrate." (quoting N.Y. C.P.L.R. 7503(a)).

Sector has not alleged that the arbitration provision agreed to by the parties[3] is invalid. Where the parties have agreed to arbitrate a dispute, a district court may issue a preliminary injunction to preserve the status quo pending arbitration. *See Rex Med. L.P.*, 754 F. Supp. 2d at 621. But here, Sector seeks to compel action prior to arbitration rather than to preserve the *status quo*. Thus, the issuance of a preliminary injunction in this case would harm the public good by circumventing an agreement to arbitrate, and in doing so undercut a valid, enforceable contract. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F. 3d 16, 19 (2d Cir. 1995) ("Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract.")

Finally, "courts of equity may go much further both to give or to withhold relief in furtherance of the public interest than where only private interests are involved." *Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115, 1121 (2d Cir. 1975). The instant matter is a purely private one. The relief Sector seeks—which, as explained above, is purely monetary— has no bearing on the public interest. *See Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 263 (N.D.N.Y. 2015) (finding that a contract dispute was "a question of purely private interest" and that "[t]o the extent it is implicated at all, 'the public interest is served by the enforcement of the parties' lawful agreement' (quoting *Benihana, Inc. v.*

---

[3]     *See* ECF No. 4-2 ¶ 9.13 (containing the parties' valid agreement to arbitrate).

*Benihana of Tokyo, LLC*, 784 F. 2d 887, 897 (2d Cir. 2015))). Therefore, the Court should find that the public interest would be disserved by the issuance of a preliminary injunction here.

### E.    A Hypothetical Arbitration Award Will Not Be Rendered Ineffectual Without Injunctive Relief

Sector argues that injunctive relief is "necessary to ensure that any arbitration award is not 'rendered ineffectual.'" ECF No. 5 at 19 (quoting N.Y. C.P.L.R. 7502(c)). In support of this, Sector merely reiterates its previous claims: that (i) it is likely to succeed on the merits; (ii) that it will face irreparable harm; and (iii) the collateral will likely be dissipated while an arbitration proceeding is pending. ECF No. 5 at 20.

For the reasons addressed above, injunctive relief is not required to "ensure that any arbitration award is not 'rendered ineffectual.'" ECF No. 5 at 19 (quoting N.Y. C.P.L.R. 7502(c)). Specifically, Sector (i) has not satisfied the high bar of showing "a 'clear' or 'substantial' likelihood of success on the merits," *Thomas*, 898 F. Supp. 2d at 597; (ii) has not met its burden of demonstrating "irreparable harm" because all of its purported injuries are regularly quantified by courts, *see Star Boxing, Inc.*, 2002 WL 31867729, at *3; and (iii) has not shown, other than through attenuated allegations, that there is a strong likelihood that the collateral will be dissipated, *see Aiena*, 37 F. Supp. 2d at 305.

Dated:    New York, NY
          November 9, 2023

                              Respectfully submitted,

                              Linklaters LLP

                              By:    */s/ Robin Nunn*
                              Robin Nunn
                              1290 Avenue of the Americas,
                              New York, NY 10104
                              (212) 903-9000
                              (212) 903-9100 (fax)
                              robin.nunn@linklaters.com

*Attorneys for Ethos Asset Management, Inc.*