UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECTOR RESOURCES LTD., <br><br> Petitioner, <br><br> v. <br><br> ETHOS ASSET MANAGEMENT, LLC, and EAST WEST BANCORP, INC. a/k/a EAST WEST BANK <br><br> Respondents. | No.: 23-cv-09728-ER |

**SECTOR'S REPLY MEMORANDUM OF LAW IN
RESPONSE TO THE OPPOSITION OF ETHOS ASSET MANAGEMENT, INC.**

SKARZYNSKI, MARICK & BLACK LLP
Janene Marasciullo
Douglas Giambarrese
One Battery Park Plaza, 32nd Floor
New York, NY 10004
(212) 820-7700
jmarasciullo@skarzynski.com
dgiambarrese@skarzynski.com

Counsel for Sector Resources, Ltd.

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

   I.   The Court Should Grant Sector's Motion for Injunctive Relief .......................................... 3

      1.   Sector is Likely to Succeed on the Merits ....................................................................... 3

      2.   Sector Has Demonstrated Irreparable Harm .................................................................... 5

      3.   The Balance of Hardships Clearly Tips in Sector's Favor .............................................. 8

      4.   An Injunction Will Serve the Public Interest .................................................................. 9

      5.   The Arbitration Award to Which Sector Is Clearly Entitled Will Be Rendered Ineffectual Without Injunctive Relief ................................................................................................ 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

Other Authorities

*3M Co. v. HSBC Bank USA, N.A.*,
 2018 WL 1989563 (S.D.N.Y. April 25, 2018) ................................................................. 4, 5, 7

*Bao v. Wang*,
 2022 WL 704023 (S.D.N.Y. Mar. 9, 2022) ............................................................................ 3, 7

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 910 F.2d 1049 (2d Cir. 1990) ................................................................................. 1, 2, 9, 10

*Brenntag In't. Chem., Inc. v. Bank of India,*
 175 F.3d 245 (2d Cir. 1999) .................................................................................................... 5

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
 147 F.R.D. 66 (S.D.N.Y. 1993) .............................................................................................. 7

*Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,*
 638 F.2d 568 (2d Cir. 1981) .................................................................................................... 9

*Campbell Apt., Ltd. v. Metro Trasp. Auth.,*
 35 N.Y.S.3d 856 (Sup. Ct. 2016) ............................................................................................ 7

*Cantu v. Flanigan,*
 705 F.Supp.2d 220 (E.D.N.Y. 2010) ...................................................................................... 7

*FTI Consulting, Inc. v. PricewaterhouseCoopers LLP,*
 8 A.D.3d 145 (1st Dep't 2004) ................................................................................................ 5

*Goat Fashion Ltd. v. 1661, Inc.*,
 2020 WL 5758917 (S.D.N.Y. Sept. 28, 2020) ........................................................................ 6

*Guitard v. Navy,*
 967 F.2d 737 (2d Cir. 1992) .................................................................................................... 7

*In re Cullman Ventures, Inc.*,
 252 A.D.2d 222 (1st Dep't 1998) ............................................................................................ 3

*Jet Experts LLC v. Asian Pac. Avia. Ltd.*,
 602 F. Supp. 3d 636 (S.D.N.Y. 2022) ............................................................................. 2, 8, 9

*Nichipruk,*
 2005 WL 1429913 ................................................................................................................... 7

*Primetime 24 Joint Venture v. DirecTV, Inc.*,
  2000 WL 426396 (S.D.N.Y. Apr. 20, 2000) ................................................................. 4

*Register.com, Inc. v. Verio*,
  356 F.3d 393 (2d Cir. 2004) ....................................................................................... 5

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
  754 F. Supp. 2d 616 (S.D.N.Y. 2010) ..................................................................... 8, 9

*Setter Cap. Inc. v. Chateauvert*,
  130 N.Y.S.3d 905 (Sup. Ct. 2020) ............................................................................. 7

*SG Cowen Sec. Corp. v. Messih*,
  224 F.3d 79 (2d Cir. 2000) ......................................................................................... 3

*Star Boxing, Inc. v. Tarver,*
  2002 WL 31867729 (S.D.N.Y. Jan. 14 2008) ............................................................ 7

*Tough Traveler, Ltd. v. Outbound Prods.,*
  60 F.3d 964 (2d Cir. 1995) ......................................................................................... 6

*U.S. Fid. & Guaranty Co. v. J. United Elec. Contr. Corp.,*
  62 F.Supp.2d 915 (E.D.N.Y. 1999) ........................................................................... 7

*Westchester Fire Ins. Co.* v *DeNovo Constructors, Inc.*,
  177 F. Supp. 3d 810 (S.D.N.Y. 2016) ........................................................................ 5

9

CPLR § 7502(c) ............................................................................................... 1, 3, 10

Fed. R. Civ. Pro. 64(a) ............................................................................................... 3

**PRELIMINARY STATEMENT**

Sector Resources Ltd. ("Sector") seeks an injunction in aid of arbitration because Ethos Asset Management, Inc. ("Ethos") has wrongfully retained more than $8.25 million of *Sector's collateral* after Sector terminated the parties' Agreement. As already explained, Ethos' wrongful retention of Sector's collateral is causing irreparable harm *and* threatens to render the arbitration award in favor of Sector ineffectual for two reasons. First, Ethos is likely to dissipate Sector's collateral – and hide its own assets – while the parties arbitrate. Second, Ethos' wrongful retention of Sector's collateral is causing irreversible damage to Sector's goodwill and threatens Sector's survival. *See e.g.,* Dkt. 5; Dkt. 4-1 at ¶¶ 7-21, 58-62.

Ethos' Opposition, which ignores the law and the facts, does nothing to undermine Sector's arguments. As a threshold matter, Ethos' argument that Sector's request for an injunction is "premature" ignores the plain language of CPLR § 7502(c), which expressly authorizes courts to grant injunctions in connection with an arbitration that "*is to be commenced*." CPLR § 7502(c). Sector advised the Court that it intended to file an arbitration, Dkt. 4-1 at ¶ 57, and it has, in fact, filed an arbitration. Ex. JMM-A[1]. Second, there is no merit to Ethos' contention that Sector has not met its burden of demonstrating that it is entitled to injunctive relief or that an injunction is necessary to ensure that the arbitration proceeding is meaningful, rather than a "hollow formality." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990).

Indeed, Ethos' Opposition demonstrates that Sector is virtually certain to prevail on its breach of contract claim against Ethos. Likewise, Ethos has not offered any credible challenge to Sector's demonstration that it will suffer irreparable harm in the absence of injunctive relief. Rather, Ethos asks the Court to ignore settled law, which recognizes that a party may demonstrate

---

[1] Ex. JMM-A and JMM-B refer to the exhibits appended to the November 10, 2023 declaration of Janene Marasciullo.

1

irreparable harm by showing a loss of goodwill and business opportunities or by showing a risk that the defendant will dissipate assets before a final adjudication. Then, in a staggering example of self-contradiction, Ethos argues that the Court should find that Sector is not suffering irreparable harm because Sector delayed filing suit, even though Sector sought relief on the day that Ethos announced it would not return Sector's collateral.

Likewise, Ethos' claims that the balance of hardships weighs in its favor and that an injunction will not serve the public interest ignore the record and well-settled law. Sector obviously has a compelling interest in regaining its own collateral, so that it can survive. In contrast, Ethos has no cognizable interest in retaining control over collateral to which it has no legal right. Further, Ethos has no cognizable interest in concealing its own unscrupulous conduct. Similarly, the public interest weighs heavily in favor of injunctive relief. As already explained, "[t]he public has an interest in the enforcement of contractual obligations and prevention of fraud." Dkt. 5 at 18 citing *Jet Experts LLC v. Asian Pac. Avia. Ltd.,* 602 F. Supp. 3d 636,645(S.D.N.Y. 2022). The injunction that Sector seeks will ensure that Sector has an opportunity to enforce the Agreement through arbitration by preventing Ethos from dissipating Sector's collateral and by ensuring that Sector's goodwill and business are not destroyed by Ethos' egregious breaches. Contrary to Ethos' arguments such an injunction will "further[], not weaken[]" pro-arbitration policies by preventing Ethos from altering the status quo in a manner that will render the inevitable arbitration award "a hollow formality." *Blumenthal*, 910 F.2d at 1053.

Finally, the record demonstrates that an injunction is necessary to ensure that the inevitable arbitration award is not ineffectual.

**ARGUMENT**

**I.      The Court Should Grant Sector's Motion for Injunctive Relief**

This Court may issue "a preliminary injunction in connection with an arbitrable controversy," upon the ground that "the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." NY CPLR § 7502(c); Fed. R. Civ. Pro. 64(a); *SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 83 (2d Cir. 2000); *Bao v. Wang*, 2022 WL 704023, at *2 (S.D.N.Y. Mar. 9, 2022). Here, Sector has demonstrated that an injunction is necessary to prevent an arbitration award from being rendered ineffectual, and it has met the traditional burden for obtaining injunctive relief. *SG Cowen*, 224 F.3d at 83 (citing *In re Cullman Ventures, Inc.*, 252 A.D.2d 222, 231 (1st Dep't 1998)).

**1.      Sector is Likely to Succeed on the Merits**

Sector has already demonstrated that it is virtually certain to succeed on its breach contract claim against Ethos because Sector fulfilled its obligation to provide collateral, but Ethos failed to deliver all three $10 million payments, which were due in July, August, and October. Dkt. 5 at 14-15; Dkt. 4-1 ¶¶ 3.1, 7.4; Dkt. 4.2 at p.7. Although Ethos sent at *least twenty written communications acknowledging its obligation* to deliver the first $10 million payment on July 20, 2023, Ethos now contends that it was never obligated to deliver any of the payments. Dkt. 29 at 12. Ethos' argument ignores the facts and the law.

First, Ethos' argument is inconsistent with its own communications. Indeed, Santos repeatedly assured Sector that it had initiated wire transfers to deliver the money.[2] Santos never claimed that Ethos was not required to deliver the money. Further, on September 29, 2023, Ethos' Chief Legal Officer stated that Ethos "never rejected our obligations," and claimed that Ethos had

instructed its banks to initiate wire transfers to deliver the money. Dkt. 4-9 at 1. After repeatedly acknowledging its obligation to provide funding, Ethos cannot, after litigation has begun, credibly disavow its obligation to deliver the payments. *See Primetime 24 Joint Venture v. DirecTV, Inc.*, 2000 WL 426396, at *8 (S.D.N.Y. Apr. 20, 2000).

Second, EWB has confirmed that it received both the SBLC, which was issued by JP Morgan Chase, (JPM) and $3.25 million in cash. Dkt. 22 at ¶ 11-22; 35. Ethos has also admitted that Sector delivered the SBLC and the cash. Dkt. 32 at ¶¶ 14, 19. The SBLC is in the form required by the Agreement. *Compare* Dkt. 4-2 at pp. 18-19 *with* Dkt. 4-10. Further, EWB verified the SBLC, which allows EWB to draw on JPM, and it remains in full force and effect. Dkt. 22 at ¶¶ 12-14; 22. Further, Ethos itself clearly "verified" the receipt of the $3.25 million in cash collateral when it withdrew it from its EWB account. *Id.* at ¶¶ 35, 39. Thus, the record belies Ethos' claim that it was not obligated to deliver the funds.

Third, Ethos' bizarre argument ignores the language of the Agreement and the law. The Agreement contemplates verification by Ethos' bank, EWB, which has performed the verification. Dkt. 22 at ¶¶ 12-14; 22. This makes perfect sense because EWB is the beneficiary of the SBLC and despite Santos' claims, only EWB can cancel the SBLC. Dkt. 22 at ¶¶ 15, 17. Indeed, the SBLC, like all letters of credit is a "commercial instrument[] that provide[s] a beneficiary," here, EWB, "with a guaranteed means of payment from a creditworthy third party," here, JPM, "in lieu of relying solely on the financial status of [the applicant]." *3M Co. v. HSBC Bank USA, N.A.*, 2018 WL 1989563 at *8 (S.D.N.Y. April 25, 2018). Thus, JPM, which issued the SBLC, is committed "to honor drafts or other demands for payment by the beneficiary," which is EWB. *Id.* Thus, EWB, not Ethos, performed the verification and it was clearly satisfied. Dkt. 22 at ¶¶ 11-22.

4

Finally, Ethos' suggestion that Sector has not demonstrated that it has been damaged by Ethos' egregious breach of its obligations to deliver $30 million in funding and to return Sector's collateral is not worthy of response. The Dell'Orfano Declaration details the damage that Sector has suffered and continues to suffer as a result of Ethos' serial breaches.

In short, Sector is likely to succeed on the merits of its claim. Ethos' arguments otherwise reflective of the bad faith delay tactics that necessitated an injunction in aid of arbitration.

## 2. Sector Has Demonstrated Irreparable Harm

Irreparable harm exists where "there is a threatened imminent loss that will be very difficult to quantify at trial." *Westchester Fire Ins. Co.* v *DeNovo Constructors, Inc.*, 177 F. Supp. 3d 810, 812 (S.D.N.Y. 2016). Thus, courts have found irreparable harm "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *3M Co.,* 2018 WL 1989563 at *8 (quoting *Brenntag In't. Chem., Inc. v. Bank of India,* 175 F.3d 245, 249 -50 (2d Cir. 1999)). Here, Sector has and will suffer two forms of irreparable harm in the absence of injunctive relief. First, as explained in the Dell'Orfano Declaration, Sector has lost "reputation, good will, and business opportunities" which constitutes irreparable harm because these losses are not readily quantifiable. *Register.com, Inc. v. Verio*, 356 F.3d 393, 404 (2d Cir. 2004), *FTI Consulting, Inc. v. PricewaterhouseCoopers LLP*, 8 A.D.3d 145, 146 (1st Dep't 2004). Second, Ethos will dissipate Sector's collateral and its own assets "before final relief can be granted," which also constitutes irreparable harm. *Westchester Fire Ins.*, 177 F. Supp. 3d at 814; *3M Co.,* 2018 WL 1989563 at *8.

Ethos asks the Court to ignore the uncontroverted evidence of Sector's irreparable harm by arguing that Sector delayed bringing this action. Dkt. 29 at p. 11. Ethos' argument is not simply inconsistent with its erroneous claim that this action is premature, it ignores the law and the facts.

It is "well-settled that good-faith attempts at settlement and investigation are acceptable justifications for delay." *Goat Fashion Ltd. v. 1661, Inc.*, 2020 WL 5758917, at *6 (S.D.N.Y. Sept. 28, 2020) citing *Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 968 (2d Cir. 1995). For example, *Goat Fashion,* and *Tough Traveler,* concluded that delays of four months and thirteen months did not vitiate a finding of irreparable harm. The record demonstrates that Sector engaged in responsible, good faith negotiations to resolve two disputes with Ethos: (1) the dispute regarding Ethos' failure to deliver the funding required by the Agreement, and (2) the dispute regarding Ethos' obligation to return Sector's collateral. The negotiations about the funding dispute began in July, but the negotiations regarding Sector's collateral began in September. Moreover, Sector sought relief as soon as it became apparent that Ethos would not return Sector's collateral.

Ethos *first offered to reduce* the face amount on the SBLC on September 5, 2023. Dkt. 4-5 at 24-25. On September 26, 2023, Ethos claimed that it directed EWB to reduce the face value on September 26, 2023. *Id.* at 18. On October 11, 2023, Ethos claimed that the SBLC had not been released because EWB had made an administrative error. Dkt. 4-4 at 9. On October 20, 2023, Ethos claimed it would deliver confirmation that EWB had released the SBLC. *Id.* at 5. On October 30, Ethos again claimed that the SBLC had not been released because EWB failed to act. *Id.* at 1(b). Therefore, on October 31, 2023, Sector terminated the Agreement and demanded the return of its collateral. *Id.* at 1(a). However, on November 3, 2023, Ethos refused, for the first time, to return Sector's collateral. Dkt. 4-12. Sector sought relief the same day. The record thus demonstrates that Sector acted both promptly and prudently. Further, these settlement discussions did not break down until November 3, 2023, when Ethos first announced it would not return Sector's collateral without a settlement agreement. Dkt. 4-12. Thus, there is no merit to Ethos' claim that there have been delays that negate a finding of irreparable harm.

6

Further, the Court should not accept Ethos' invitation to ignore settled law that damage to goodwill and the permanent loss of a business constitutes irreparable harm because the cases cited by Ethos are wholly inapposite. Indeed, the vast majority of the case cited by Ethos involved employment disputes, where the plaintiff failed to exhaust administrative remedies, *Guitard v. Navy,* 967 F.2d 737 (2d Cir. 1992), or where the plaintiff suffered lost wages, which are easily quantified. *Nichiporuk v. Bd. Of Ed.,* 2005 WL 1429913 (W.D.N.Y. June 20, 2005); *Setter Cap. Inc. v. Chateauvert*, 130 N.Y.S.3d 905 (Sup. Ct. 2020); *Star Boxing, Inc. v. Tarver,* 2002 WL 31867729 (S.D.N.Y. Jan. 14 2008). *Cantu v. Flanigan,* 705 F.Supp.2d 220 (E.D.N.Y. 2010), involved a garden variety defamation claim, and *Campbell Apt., Ltd. v. Metro Trans. Auth.,* 35 N.Y.S.3d 856 (Sup. Ct. 2016), involved a commercial lease dispute where a tenant sued a landlord who chose not to renew a lease. Thus, these cases are not determinative of whether Sector is suffering irreparable harm.

Finally, there is no merit to Ethos' claim that the Court should ignore the long line of cases in which "courts in this circuit have granted preliminary injunctions in cases seeking monetary relief if the non-movant's assets may be dissipated before final relief can be granted." *Bao v. Wang*, 2022 WL 704023 at *2 (S.D.N.Y. March 9, 2022)( citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 147 F.R.D. 66, 68 (S.D.N.Y. 1993)); *U.S. Fid. & Guaranty Co. v. J. United Elec. Contr. Corp.,* 62 F.Supp.2d 915, 923-27 (E.D.N.Y. 1999); *see also 3M Co.,* 2018 WL 1989563 at *8. Here, the record demonstrates, beyond dispute, that Ethos has already dissipated Sector's collateral by encumbering the SBLC with $ 6.8 million of debt and by withdrawing approximately $2.5 million of the $3.25 million cash collateral from the account into which it was wired. Dkt. 22 at ¶¶ 33-39.

Thus, Sector has demonstrated that it will suffer irreparable harm without injunctive relief.

### 3. The Balance of Hardships Clearly Tips in Sector's Favor

Further, it is clear that "the balance of hardships tips in the [Sector's] favor." *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 625 (S.D.N.Y. 2010). Here, Ethos has a clear and unequivocal contractual obligation to return Sector's collateral, (Dkt. 4-2 at ¶¶ 7.6, 8.2), but it has refused to do so. Dkt. 4-12. As a result, Sector shut down operations in Canada, dismissed employees and faces the termination of its leases and the destruction of twenty years of work. Dkt. 4-1 ¶¶ 5, 7-21, 34, 54, 58, 62. In addition, Sector's goodwill with its employees, the mining authorities in Canada and Colombia and its bank has been damaged. *Id.* at 5, 19-21, 58. Sector clearly has an interest in preventing this irreparable harm by enforcing its Agreement with Ethos. *Jet Experts LLC v. Asian Pac. Avia. Ltd.,* 602 F. Supp. 3d 636, 645(S.D.N.Y. 2022).

In contrast, Ethos has no cognizable interest in skirting its contractual obligations or concealing its systematic effort to retain Sector's collateral, which "borders, if it does not cross, the line of fraud." *Id.* Indeed, compelling Ethos "to comply with contractual obligations," that it voluntarily accepted, is "not the sort of 'damage' that is compensable at law." *Rex Med.*, 754 F. Supp. 2d at 627. Further, Ethos' cannot credibly claim that its reputational interests weigh against enforcing its contractual obligation to return Sector's collateral because another client, Beyond Limits, Inc. has accused Ethos of "goad[ing] borrowers into posting large amounts of collateral" and then refusing to perform its own obligation to provide financing. Dkt. 10-1 ¶¶ 16, 40-44. In addition, another client, Entvantage Diagnostics, sued Ethos for engaging in similar conduct. *Id.* ¶¶ 16, 40-44; 140-176; Ex. JMM-B. In short, Ethos' interest in being able to breach its agreements and engage in fraud does not outweigh Sector's interest in continuing to operate. *See Jet Experts,* 602 F. Supp. 3d at 645; *Rex Med.*, 754 F. Supp. 2d at 627.

In sum, the harm that Sector will suffer in the absence of an injunction "is 'decidedly' greater than the harm that [EWB] will suffer" if the injunction is granted. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568, 569 (2d Cir. 1981).

### 4.   An Injunction Will Serve the Public Interest

As already explained, granting an injunction will serve the public interest, which favors "the enforcement of contractual obligations and prevention of fraud." Dkt. 5 at 18 citing *Jet Experts*, 602 F. Supp. 3d at 645; *Rex Med.*, 754 F. Supp. 2d at 626. Here, Ethos systematic effort to retain Sector's collateral "borders, if it does not cross, the line of fraud." *Id.* "There is no countervailing public policy favoring defendants who have not acted in good faith." *Jet Experts*, 602 F. Supp. 3d at 645. Ethos attempts to belittle these strong public interests by arguing that granting injunctive relief will undermine the public interest in enforcing arbitration agreements. However, the Second Circuit has unequivocally rejected this argument.

Indeed, in *Blumenthal,* the Second Circuit held that public interest in enforcing arbitration agreements is "furthered, not weakened by a rule permitting a district court to preserve the meaningfulness of the arbitration through a preliminary injunction." 910 F.2d at 1053. If Ethos is permitted to alter the status quo by dissipating or hiding Sector's collateral and its own assets – or to use its control over Sector's collateral to drive it out of existence – any award will be a "hollow formality" and, thus, an injunction "fulfills the court's obligation under the FAA to enforce a valid agreement to arbitrate." *Id.*

Thus, the public interest in enforcing contracts, preventing fraud, and promoting arbitration all weigh heavily in favor of an injunction that prevents Ethos from making Sector responsible for the financial consequence of Ethos' serial contractual breaches and fraud.

### 5. The Arbitration Award to Which Sector Is Clearly Entitled Will Be Rendered Ineffectual Without Injunctive Relief

Finally, the Court should grant Sector's motion for injunctive relief because such relief is necessary to ensure that any arbitration award is not "rendered ineffectual." NY CPLR § 7502(c). As already explained, Sector is virtually certain to prevail in an arbitration against Ethos, but the award will "become a 'hollow formality'" if EWB is allowed to "alter irreversibly the status quo" by withholding Sector's collateral while Sector dutifully fulfills its obligation process. Dkt. 23 at 19 (*citing Blumenthal*, 910 F.2d at 1053).

### CONCLUSION

In sum, the record contains ample evidence to support the traditional requirements for injunctive relief and demonstrates that the inevitable arbitration award in Sector's favor will be rendered ineffectual in the absence of injunctive relief. Therefore, Sector respectfully requests the Court to issue a temporary restraining order and preliminary injunction that enjoins EWB and Ethos from making any withdrawals from any Ethos account at EWB.

Dated: November 10, 2023

        **SKARZYNSKI, MARICK & BLACK LLP**

        */s/ Janene Marasciullo*

        Janene Marasciullo
        Douglas Giombarrese
        One Battery Park Plaza, 32nd Floor
        New York, NY 10004
        (212) 820-7700
        jmarasciullo@skarzynski.com
        dgiormbarrese@skarzynski.com

        Our File No. 25156

        *Counsel for Sector Resources, Ltd.*

4860-8419-5472, v. 1

11