UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECTOR RESOURCES LTD.,<br><br>        Petitioner,<br><br>    v.<br><br>ETHOS ASSET MANAGEMENT, LLC, and EAST WEST BANCORP, INC. a/k/a EAST WEST BANK<br><br>        Respondents. | No.: 23-cv-09728-ER |

**SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF RENEWED MOTION FOR INJUNCTIVE RELIEF
AGAINST EAST WEST BANCORP, INC.**

SKARZYNSKI, MARICK & BLACK LLP
Janene Marasciullo
One Battery Park Plaza, 32nd Floor
New York, NY 10004
(212) 820-7700
jmarasciullo@skarzynski.com

Counsel for Sector Resources, Ltd.

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF RELEVANT FACTS ...................................................................................... 2

ARGUMENT .................................................................................................................................. 5

   I.   The Court Should Grant an Injunction in Aid of Arbitration ............................................. 5

     1.   Sector is Likely to Succeed on the Merits ........................................................................ 6

CONCLUSION……………………………………………………………………………….9

# **TABLE OF AUTHORITIES**

Page(s)

*3M Co. v. HSBC Bank USA, N.A.*,
   2018 WL 1989563 (S.D.N.Y. April 25, 2018) ............................................................... 6

*3 Com Corp. v. Banco do Brasil*,
   171 F.3d 739, 747 (2d Cir. 1999) .................................................................................. 6

*Bao v. Wang*,
   2022 WL 704023, at *2 (S.D.N.Y. Mar. 9, 2022) ......................................................... 4

*In re Cullman Ventures, Inc.*,
   252 A.D.2d 222 (1st Dep't 1998) .................................................................................. 5

*Metro. Taxicab Bd. of Trade v. City of N.Y.*,
   615 F.3d 152 (2d Cir. 2010) .......................................................................................... 5

*SG Cowen Sec. Corp. v. Messih*,
   224 F.3d 79 (2d Cir. 2000) ........................................................................................ 1, 5

*Sztejn v. Schroeder Banking Corp.*,
   31 N.Y.S.2d 631 (N.Y. Cnty. 1941) ....................................................................... 6,7,8

*TC Skyward Aviation US, Inc. v. Deutsche Bank, AG NY Branch*
   557 F.Supp. 3d 477, 486 (S.D.N.Y. 2021) .................................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .......................................................................................................... 5

*United Bank Ltd. v. Cambridge Sporting Goods Corp.*,
   41 N.Y.2d 254 (1976) ............................................................................................. 6,7,8

Other Authorities

7502(c) of the New York Civil Practice Law and Rules .................................................... 5

N.Y. U.C.C. § 3-302 ............................................................................................................ 8

N.Y. U.C.C. § 3-307 ............................................................................................................ 8

N.Y. U.C.C. § 5-109 ................................................................................................. 2, 7, 8, 9

**PRELIMINARY STATEMENT**

Pursuant to Federal Rules of Civil Procedure 64 and 65 and Section 7502(c) of the CPLR, Sector Resources Ltd. ("Sector") hereby renews it request for an injunction in aid of arbitration which enjoins East West Bancorp, Inc. a/k/a East West Bank ("EWB") from (1) drawing on a Standby Letter of Credit ("SBLC") and (2) making withdrawals from Ethos' account at EWB. Dkt. 4, 5. In support of this Motion, Sector relies on the pleadings submitted in support of and in opposition to its original request for injunctive relief, the criminal complaint filed against Carlos Santos ("the Criminal Complaint"), the Chief Executive Officer of respondent, Ethos Asset Management, Inc. ("Ethos") and the Exhibits to the accompanying declaration of Janene Marasciullo.

On November 3, 2023, Sector Resources Ltd. ("Sector") moved for injunction because Ethos' breached its obligation to return more than $8.25 million of *Sector's own collateral* threatens to render the *inevitable* arbitration award in favor of Sector ineffectual. *See* Fed. R. Civ. Pro. 64; 65; CPLR § 7205(c); *SG Cowen Sec. Corp. v. Messih,* 224 F.3d 79, 83 (2d Cir. 2000). Sector demonstrated that: (1) it is likely to succeed on a breach of contract claims against Ethos, an unjust enrichment claim against EWB; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) the balance of hardships favor injunctive relief; (4) the public interest weighs heavily in favor of injunctive relief and (5) that an arbitration award will rendered ineffective without injunctive relief. Dkt. 5 at 12-19; Dkt. 28 at 4-10; Dkt. 33 at 3-10. Sector did not assert any fraud claim in support of its motion. Nonetheless, on November 8, 2023, EWB admitted that: "[i]f the facts alleged by Sector in its Petition are true, Sector *may have been wrongfully induced to by Ethos to cause the issuance of the JPM SBLC* in favor of EWB." Dkt. 21 at p. 1 (emphasis added); *see also Id.* at p. 6. EWB argued that the doctrine of independence precluded any order enjoining draws on the SBLC. Dkt. 21 at p. 6-7.

1

Sector, which had only alleged a breach of contract claim against Ethos and an unjust enrichment claim against EWB, withdrew its request for an order enjoining draws on the SBLC on November 9, 2023.  Dkt. 28 at 1.  However, the available evidence has changed dramatically since Sector filed its motion and supporting briefs and now it is quite clear that Sector will likely succeed on a fraud claim, which warrants enjoining any draws on the SBLC.

 The Criminal Complaint, which was unsealed on November 15, 2023, provides compelling evidence that Ethos obtained the SBLC through that fraud.  Two days later, without providing any notice, EWB send a demand to Sector's bank, JPMorgan Chase ("JPM"), to pay the full face value of the SBLC.  As explained below, because Ethos obtained the SBLC through fraud and allowing draws on the SBLC will work a fraud upon Sector, the Court should enjoin EWB from taking draws on the SBLC.  *See* N.Y.U.C.C. § 5-109(b)(4).

## STATEMENT OF RELEVANT FACTS

As already explained, in March 2023, Sector and Ethos executed a loan agreement ("the Agreement"), pursuant to which Ethos agreed to loan $50 million to Sector, provided Sector provided collateral, consisting of $3.25 million in cash and the SBLC, with a face value of approximately $5.05 million.  Dkt. 5 at 3-5; Dkt 4-2 ¶¶ 3.1; 3.3; 3.4; Dkt. 4-3¶¶ 3.3; 3.3.1., 3.3.2.  Sector executed the Agreement after Ethos provided documents which represented that Ethos had over $300 million and $1.7 billion in assets in 2020 and 2021, respectively.  Ex. at A at 2, 8, 17.

There is no dispute that Sector delivered the collateral.  EWB admits that Sector provided the SBLC and delivered cash collateral worth $3.25 million.  Dkt. 22 ¶¶ 11-22; 35.  However, unbeknownst to Sector, on or about December 29, 2022, EWB granted Ethos a $14.8 line of credit ("the Line").  Dkt. 22 at ¶7; 22-1.  According to EWB, the Loan is secured by *multiple* "irrevocable standby letters of credit," but EWB has not disclosed the exact number of letters of credit support the Line or the amount available under those letters of credit.  Dkt. 22 ¶ 8.  In

other words, Sector's SBLC is not the only security that EWB has for the Line. *Id.* ¶¶ 8, 10; Dkt. 4-4 at 1(b). Sector is not a party to the Line. Dkt. 21 at 3; Dkt. 22 ¶¶ 24, 25.

On November 3, 2023, Sector filed a motion for injunctive relief in aid of arbitration and argued that it was likely to prevail on a breach of contract claim against Ethos, but any arbitration award would be ineffectual because Ethos would likely dissipate its assets and Sector's goodwill and existence would be threatened without injunctive relief. Dkt. 5 at 12-20. Sector did not assert any fraud claim in support of its motion. However, EWB admitted that: "[i]f the facts alleged by Sector in its Petition are true, *Sector may have been wrongfully induced to by Ethos to cause the issuance of the JPM SBLC in favor of EWB*." Dkt. 21 at p. 1 (emphasis added); *see also* p. 6. EWB argued that the Court should not enjoin it from drawing on the SBLC because Sector had alleged only a breach of contract claim and the independence principle prohibited injunctive relief. Dkt. 21 at p. 6 citing *3M Co. v. HBSC Bank USA NA,* 2018 WL 1989563 at *9 (S.D.N.Y. April 25, 2018). Sector, which had only alleged a breach of contract claim against Ethos and an unjust enrichment claim against EWB, withdrew its request for an injunction on the SBLC.

The Court held a hearing on Sector's request on November 13, 2023. During the hearing, Sector's counsel learned that the United States Department of Justice ("the Government") had arrested Ethos' CEO, Carlos Santos and reported that fact to the Court. The Court, in turn, indicated that the nature of the charges leveled against Santos might impact the resolution of Sector's request for relief. Ex. E at 67-68. The Court directed Sector's counsel to file a copy of the Criminal Complaint when it became available. *Id.* at 68, 69.

On November 15, 2023, the Government unsealed the Criminal Complaint against Santos. Dkt. 35-1, Ex B. The Criminal Complaint, charges Santos, along with unnamed co-

3

conspirators, with conduct related to this dispute. Specifically it charges Santos with wire fraud, and alleges that a scheme to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises." Ex. B at 1.[1] It is based on "thousands of emails sent by Santos" which were obtained from victims or search warrants. Ex. B at p. 2.

The Criminal Complaint also states that Santos is the founder, president and CEO of Ethos and that Santos "holds Ethos out to the public as entity offering loans to companies." Dkt. 35-1, Ex. B at p. 2.  It further states that "to obtain a loan from Ethos, Santos requires a prospective borrower to deposit an upfront fee," however, "once a borrower pays the upfront fee, Santos does not make the loan disbursements as agreed by the parties." Ex. B at pp. 2-3. Instead, Santos "use[d] the upfront fee to pay back other borrowers, pay co-conspirators, pay himself, and pay for personal expenses." *Id.* at p. 3.   Santos goaded borrowers into providing these upfront fees by providing fraudulent documents indicating that Ethos had hundreds of millions of dollars, if not billions of dollars.  *Id.* at 3-5.  Further, to facilitate this fraudulent scheme, Santos and Ethos "obtained a $14.8 million line of credit from U.S. Financial Institution 1." *Id.* at p. 6.  According to the Criminal Complaint, U.S. Financial Institution 1, like EWB, is an entity insured by the Federal Deposit Insurance Corporation and headquartered in California. *Id.* at p. 2.

In other words, the Criminal Complaint alleges the same exact fraudulent scheme alleged in Sector's petition.   Here, Santos goaded Sector into providing collateral by providing financial statements which suggested that Ethos had approximately $1.7 billion in assets.   Ex. A at p. 16. Significantly, one piece of the collateral was the SBLC, which EWB has drawn on to satisfy a

---

[1] When referencing Exhibit B, this brief refers to the page numbers contained in the ECF stamp at the top of the page.

4

$6.8 million debt on a $14.8 million line of credit.  Dkt. 22 at ¶¶ 7-22; Dkt. 46.  Once Sector provided collateral, Santos and Ethos refused to disburse the loan in accordance with the Agreement.

On November 17, 2023, two days after Sector filed the Criminal Complaint on the docket in this case, EWB notified Sector that it intended to draw the full face value of the SBLC.  Ex. C.  Sector's counsel contacted EWB's counsel by telephone to object.  JMM Dec. ¶ 6.  Rather than confer, EWB's counsel notified the Court that EWB intended to draw on the SBLC because Sector did not object.  Dkt. 46.  Sector's counsel duly notified EWB of its objection.  Ex. D.  However, EWB's counsel did not respond to Sector's communication.

## ARGUMENT

### I. The Court Should Grant an Injunction in Aid of Arbitration

As explained in Sector's opening brief, Rule 64(a), in conjunction with CPLR § 7502(c) allows this Court to issue "a preliminary injunction in connection with an arbitrable controversy," upon the ground that "the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief."  CPLR § 7502(c); *SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 83 (2d Cir. 2000); *Bao v. Wang*, 2022 WL 704023, at *2 (S.D.N.Y. Mar. 9, 2022).  To obtain an injunction in aid of arbitration, Sector must demonstrate that an injunction is necessary to prevent an arbitration award from being rendered ineffectual, as well as the traditional standards for injunctive relief.  *SG Cowen*, 224 F.3d at 83 (citing *In re Cullman Ventures, Inc.*, 252 A.D.2d 222, 231 (1st Dep't 1998)).  Thus, Sector must demonstrate: (1) "irreparable harm absent injunctive relief"; (2) "either a likelihood of success on the merits, or a serious question going to the merits . . . with the balance of hardships tipping decidedly in [petitioner's] favor"; and (3) that the public interest "weighs in favor of granting an injunction."  *Metro. Taxicab Bd. of Trade v. City of N.Y.*,

5

615 F.3d 152, 156 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Sector has met its burden.  Sector respectfully incorporates the arguments set forth in its Opening Brief, and its Replies to the Oppositions submitted by EWB and Ethos, which demonstrate that: (1) Sector is likely to succeed on a breach of contract claims against Ethos, an unjust enrichment claim against EWB; (2) that Sector will suffer irreparable harm in the absence of injunctive relief; (3) the balance of hardships favor injunctive relief; (4) the public interest weighs heavily in favor of injunctive relief and (5) that an arbitration award will rendered ineffective without injunctive relief.  Dkt. 5 at 12-19; Dkt. 28 at 4-10; Dkt. 33 at 3-10.  In light of the evidence set forth in the Statement of Probable Cause appended to the Criminal Charges, it Sector is also likely to succeed on its claim that the SBLC was the product of fraud and that EWB was not a holder in due course when it submitted its November 17, 2023 demand for payment because it was on notice of Ethos' fraud.

### 1. Sector is Likely to Succeed on the Merits

Sector has demonstrated "either a likelihood of success on the merits, or a serious question going to the merits . . . with the balance of hardships tipping decidedly in [petitioner's] favor." *Metro. Taxicab Bd.*, 615 F.3d at 156 (quoting *Winter,* 555 U.S. at 20).

 "Fraud provides a well-established exception to the rule that banks must pay a beneficiary under a letter of credit when documents conforming on their face to the terms of the letter of credit are presented." *3M Corp. v. HSBC Bank USA, NA.,* 2018 WL 1989563 at *9 (S.D.N.Y. April 25, 2018) (citations omitted).  Pursuant to NY UCC Section 5-109(b)(4), a court may enjoin draws on a letter of credit where a document is materially fraudulent or where honoring a presentation will "facilitate a material fraud by the beneficiary on the issuer or

6

applicant." See N.Y.U.C.C. § 5-109(b)(4); *United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 261-62 (1976); *Sztejn v. Schroeder Banking Corp.*, 31 N.Y.S.2d 631 (1941); *see also 3Com Corp. v. Banco do Brasil,* 171 F.3d 739, 747 (2d Cir. 1999); *TC Skyward Aviation US, Inc. v. Deutsche Bank, AG NY Branch,* 557 F.Supp.3d 477, 486 (S.D.N.Y. 2021). Upon a showing of fraud in the transaction, the burden shifts to EWB to "prove that [it was a] holder[] in due course and [it] took the drafts for value, in good faith, and without notice of fraud." *Cambridge Sporting Goods*, 41 N.Y.2d at 257-58; 261-62; N.Y. U.C.C. § 3-307(3). Here, the record demonstrates that Ethos obtained the SBLC through fraud and that EWB knew that the SBLC was the product of material fraud when it attempted to draw on the SBLC. Accordingly, EWB cannot show that it is a holder in due course and the Court should enjoin EWB from drawing on the SBLC.

First, the record contains overwhelming evidence that the SBLC was the product of fraud. Indeed, Ethos' CEO, Santos, sent a financial statements to Sector, which indicated that Ethos has approximately $1.7 billion in assets to induce Sector to execute the Agreement and provide the SBLC and the cash collateral. Ex. A at pp. 2, 17. This is exactly the same pattern of fraudulent conduct described in the sworn statement of probable cause of FBI Special Agent Kevin Daly appended to the Criminal Complaint. Dkt. 35 -1, Ex B at pp. 2-6. Further, the Criminal Complaint states that "financial tracing shows that Santos used the upfront fees to pay back other borrowers, pay co-conspirators, pay himself and pay for personal expenses." *Id.* at 3. During the November 13, 2023 hearing, EWB's counsel stated that the $3.25 million that Sector deposited into EWB's account was withdrawn shortly after being deposited. Thus, the record establishes that Ethos induced Sector through the same pattern of fraudulent conduct described in the Criminal Complaint.

Further, there can be little doubt that the fraud was material. Sector would not have provided the collateral but for Ethos' promise to fund the loan. New York courts have found material fraud in far less compelling situations. For example, in *Cambridge Sporting Goods Corp.*, the court found that the delivery of "old, unpadded, ripped and mildewed gloves rather than the new gloves" constituted fraud in the transaction. *Cambridge Sporting Goods Corp,* 41 N.Y.2d at 256. Similarly, in *Sztejn*, the court found that a shipment of "cowhair, other worthless material and rubbish with intent to simulate genuine merchandise" warranted fraud in the transaction. *Sztejn*, 31 N.Y.S.2d at 633. Here, it is undisputed that Ethos delivered *nothing* in exchange for $3.25 million and the $5.05 SBLC. Dkt. 4-1 at 50; Dkt. 6, Dkt. 30. Thus, the fraud is "so serious as to make it obviously pointless and unjust to permit the beneficiary to obtain the money." N.Y. U.C.C. § 1-509, Official Comment No. 1. Thus, Sector is likely to prevail on a claim that Ethos induced Sectro to provide the SBLC through fraud.

Second, EWB will not be able to demonstrate that it was not on notice of Ethos' fraud. This is critical because "*where the seller's fraud has been called to the bank's attention before the drafts and documents have been presented for payment*, the principle of the independence of the bank's obligation under the letter of credit should not be extended to protect the unscrupulous seller." *Sztejn,* 31 N.Y.S.2d at 634 (emphasis added). In such situations, "where the defense of fraud in the transaction [is] established," the "burden shifts to [the beneficiary] to prove that [it was a] holder[] in due course and took the drafts for value, in good faith, and without notice of any fraud." *Cambridge Sporting Goods Corp.*, 41 N.Y.2d at 257-28; 260-62; N.Y. U.C.C. §§ 3-302(1)(c); 3-307(3). Here, the record prevents EWB from demonstrating that it took the drafts without notice of Ethos' fraud.

8

EWB's November 8, 2023 Opposition admits that the facts alleged in Sector's petition indicate that Sector was "wrongfully induced by Ethos to cause the issuance of the [] SBLC." Dkt. 21 at 1; *see also* Dkt. 21 at 6.  The Criminal Complaint, which is based on the review of thousands of emails, eviscerates any doubt regarding the truthfulness of Sector's allegations.  It reflects compelling evidence of Ethos' ongoing and deliberate efforts to defraud borrowers like Sector. Dkt. 35-1, Ex. B.  It also indicates that Santos and Ethos used a $14.8 million line of credit from an unidentified U.S. financial institution headquartered in California to perpetuate their fraud. Ex. B at p. 6.   Here, EWB is headquartered in California and it provided a $14.8 million line of credit to Ethos.   Dkt. 22 at ¶¶ 7-9, Dkt. 22-1. Given the overlap between the evidence set contained in the Criminal Complaint and the evidence supporting Sector's request for relief, EWB was clearly on notice that the SBLC was the product of fraud on November 15, 2023 at the very latest.[2]

Nonetheless, two days *after* Sector filed the Criminal Complaint on the docket in this case, EWB issued a demand for the entire face value of the SBLC.  Dkt. 46, Ex. C.  However, EWB clearly had notice of Sector's fraud defense when it demanded payment on the SBLC. EWB is therefore not a holder in due course, and the Court may enjoin EWB from drawing on the SBLC.  N.Y. U.C.C. §§ 3-302(c); 5-109(b)(4); *see e.g., Cambridge Sporting Goods Corp.*, 41 N.Y.2d at 257-63; *Sztejn,* 31 N.Y.S.2d at 634.

## CONCLUSION

In sum, the record contains ample evidence to support the traditional requirements for injunctive relief and demonstrates that the inevitable arbitration award in Sector's favor will be

---

[2] Indeed, the similarities between "U.S. Financial Institution 1" and EWB and the fact that both extended a $14.8 million line of credit to Ethos in late 2022, suggest that EWB may be U.S. Financial Institution 1 and may have been aware of the investigation into Ethos long before Sector sought relief.

9

rendered ineffectual in the absence of injunctive relief. Therefore, Sector respectfully requests the Court to issue a temporary restraining order and preliminary injunction that: (1) enjoins EWB from making any draws on the SBLC; (2) enjoins EWB and Ethos from making any withdrawals from any Ethos account at EWB until Ethos provides proof that it has returned Sector's $3.25 million in cash collateral.

Dated: November 20, 2023

                                       **SKARZYNSKI, MARICK & BLACK LLP**

                                       */s/ Janene Marasciullo*

                                       Janene Marasciullo
                                       One Battery Park Plaza, 32nd Floor
                                       New York, NY 10004
                                       (212) 820-7700
                                       jmarasciullo@skarzynski.com
                                       Our File No. 25156

                                       *Counsel for Sector Resources, Ltd.*

## CERTIFICATE OF SERVICE

      I certify that on November 20, 2023, I filed the foregoing Memorandum of Law, the Accompany Declaration and Exhibits thereto via ECF, which sent notifications to all counsel of record via email. In addition, I served the foregoing on defendant Ethos Asset Management, Inc., by serving its CEO, Carlos Santos, at the email address contained in the Agreement:

      carlos@ethosasset.com

      */s/ Janene Marasciullo*
      Janene Marasciullo

4877-2404-4434,